IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SILAS MARTIN, #145 609, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:14-CV-1184-MHT |
| ) | [WO] |
| OFFICER IRVIN HARRIS, ) | |
| ) | |
| Defendant. ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Silas Martin, an inmate in the custody of the Alabama Department of Corrections, files this *pro se* civil rights action under 42 U.S.C. § 1983. He alleges a claim of excessive force in violation of his Eighth Amendment rights during his incarceration at the Kilby Correctional Facility in Mt. Meigs, Alabama. The complaint is filed against Officer Irvin Harris. Plaintiff requests compensatory and punitive damages. Doc. 1.

Harris filed an answer, special report, supplemental special reports, and supporting evidentiary materials addressing Martin's claims for relief. Docs. 14, 37, 38. In these filings, Harris denies that he acted in violation of Martin's constitutional rights. *Id.* Upon receipt of Harris' special report, as supplemented, the court issued orders directing Martin to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioned Martin that "the court may at any time thereafter and without notice to the parties (1) treat the special report, supplemental special reports, and any supporting evidentiary materials as a motion for summary judgment." Doc. 15, 39. Martin responded to Harris' special report, *see* Doc. 21, but his response does not demonstrate that there is any genuine issue of material fact. *See* Doc. 15 at 2. The court

will treat Harris' report, as supplemented, as a motion for summary judgment, and will recommend resolution of this motion in his favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Harris has met his evidentiary burden. Thus, the burden shifts to Martin to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact)

2

(internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Martin's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. Absolute Immunity

Martin brings suit against Harris in his individual and official capacities. Regarding the constitutional violations which Martin alleges against Harris in his official capacity, he is entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted),

3

and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Harris is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B. Excessive Force**

**1. Qualified Immunity**

In response to Martin's allegation of excessive force, Harris argues that he is entitled to qualified immunity in his individual capacity. Qualified immunity offers complete protection for a government official from suit—provided that the official was performing discretionary functions and has been sued in his individual capacity—if the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that the doctrine of "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects public officials from broad-ranging discovery disruptive to effective government, *see id*. at 818, and operates as a shield against civil damages due to mistaken judgments. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Butz v. Economou*, 438 U.S. 478, 507 (1978) ("[Public] officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

4

In order to receive qualified immunity, Harris must demonstrate that he was acting within his discretionary authority. *Johnson v. Boyd*, 701 Fed. App'x. 841, 847 (11th Cir. 2017). If Harris establishes that he was performing a discretionary function, the burden shifts to Martin to show qualified immunity should not apply. *Id.*; *see also Bowden v. Stokely*, 576 Fed. App'x. 951, 954 (11th Cir. 2014) (per curiam) (assessing qualified immunity with respect to Bowden's allegation of excessive force). To meet his burden, Martin must demonstrate that Harris violated a constitutional right, and that the right was clearly established at the time of the violation. *Johnson* 701 Fed. App'x at 847. The court may consider the two prongs in either order, and Harris is entitled to qualified immunity if Martin fails to establish either one. *See Pearson*, 555 U.S. at 236.

If a plaintiff fails to demonstrate a constitutional violation—that is, if the plaintiff does not present evidence which, when viewed in the light most favorable to that plaintiff, supports an Eighth Amendment excessive force claim—the officer is entitled to qualified immunity. A *per se* rule that qualified immunity is inappropriate on summary judgment where a plaintiff has not presented evidence that could sustain an Eighth Amendment excessive force claim would eviscerate the plaintiff's burden of proof to show a constitutional violation once a defendant evokes qualified immunity, and turn Rule 56 on its head. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002), and *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (a plaintiff bears the burden to show that a constitutional violation occurred to defeat a defendant's assertion of qualified immunity); *see also Celotex*, 477 U.S. at 323-24; Fed. R. Civ. P. 56; *Skelly v. Okaloosa County Bd. of County Com'rs*, 456 F. App'x 845, 847-48 (11th Cir. 2012) (engaging in a qualified immunity analysis on Eighth and Fourteenth Amendment excessive force claims and distinguishing between a plaintiff's burden to show a constitutional violation in the first instance from the fact that, once a violation is demonstrated, the Eighth Amendment right is always clearly established).

### a. Summary Judgment Facts for Qualified Immunity Purposes

On November 17, 2014, at approximately 12:15 p.m., Harris directed Martin, who was at the infirmary (P-Ward), to remove his cap. Martin complained that it was cold, but he complied. Harris then directed Martin to give him the cap. Martin refused, and instead asked to speak with a supervisor. Harris told Martin that he was the supervisor, and ordered Martin to report to the lobby. Martin proceeded to the lobby of P-Ward, where Harris pushed him against a wall, shoved his hand in Martin's face, and forced Martin's arm behind his back while informing the inmate he did not know "who [he was] fucking with!" Martin responded by stating, "Don't put your hands in my face! Get your hands out my face and release my arm! You're hurting me!" Martin added, "I'm taught to fight to the end in the way of God those who fight me, whether it be they cease fighting or death!"

Harris ordered Martin to place his left hand behind his back. Martin did not comply, and expressed concern that he might be harmed if he dropped his catheter from that hand. In response, Harris applied more pressure to Martin's right arm and told Martin to drop the catheter. Martin did so. He alleges that this caused blood to run into the bag attached to the catheter, which later led to an infection. Harris then grabbed Martin's left arm and handcuffed him so tightly it cut off Martin's circulation and left deep marks in his left arm. Lieutenant McLain arrived at the scene, removed Martin's handcuffs and ordered him to return to the infirmary, which he did.  At 12:40 p.m., Martin requested another body chart so that medical staff could take pictures of bruises on his arm and because his bladder was still producing blood inside his catheter bag due to Harris' use of force. Docs. 1, 21, 21-5.

According to Martin's undisputed medical records, he received a body chart at 12:20 p.m. following the incident with Harris. He complained to medical personnel about being handcuffed

6

too tightly. Medical staff observed two small red marks on Martin's right wrist. Medical staff noted the existence of Martins' catheter, but the body chart does not otherwise reflect any complaint, injury, or problem regarding the device.[1] Doc. 14-3 at 3.

### b. Discretionary Authority

Harris argues that he was acting within the scope of his discretionary authority in his encounter with Martin – that is, "doing what correctional officials do, supervising and controlling inmates." Doc. 14 at 8. "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). While defendant does not specifically address what his duties or authority were in his affidavit, it is clear from that document that his actions relating to the plaintiff were untaken pursuant to the performance of the ordinary duties, and within the scope of authority of a correctional officer. *See* Doc. 14-2. Martin does not dispute this point. Accordingly, the burden shifts to Martin to demonstrate that Harris violated his constitutional right to be free from excessive force, and that such right was clearly established at the time of the violation. *See Cottone*, 326 F.3d 1352, 1358 (11th Cir. 2003) ("Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.").

### c. Constitutional Violation

Claims of excessive force by jail officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169

---

[1] Martin's medical records reflect that he was admitted to Kilby's infirmary on November 14, 2014, following a surgical procedure that he underwent at a free world hospital on November 13, 2014. The surgical procedure required placement of a Foley catheter, which Martin continued to use on his return to Kilby. *See* Doc. 14-6.

7

F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. 503 U.S. at 8 (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.' " *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The core inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (2010) *(per curiam)* (quoting *Hudson*, 503 U.S. at 7).

Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per*

8

*curiam*). As explained, while a lack of serious injury is relevant to the inquiry, "[i]njury and force … are only imperfectly correlated and it is the latter that ultimately counts." *Wilkin*, 559 U.S. at 38. *See also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force...."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

Viewing the evidence of record in the light most favorable to Martin, Harris used a constitutionally permissible use of force to maintain order, prison security, and his safety. As related by Martin, he failed to comply with Harris' order to give Harris his cap, became belligerent, and made a threatening statement to Harris which the officer reasonably could perceive as a direct threat to his safety. *See Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990) (holding that a prison guard may use force to maintain order and that a verbal altercation between an inmate and a guard can fall within the scope of maintaining order). Martin also resisted Harris' attempt to handcuff him out of concern he might drop his catheter. While Martin ultimately released his catheter, he claims that dropping the catheter on the floor caused it to malfunction and subsequently led to an infection. However, medical staff evaluated Martin immediately after the incident and did not note any problem or concern with Martin's catheter, indicating only that he had one. Doc. 14-3 at 3. The body chart further reflects that Martin's only statement to medical personnel was that he had been handcuffed too tightly. *Id.* Medical staff observed two small red marks to Martin's right wrist, but no other injuries or issues were noted. *Id.*

Here, Martin has not demonstrated that Harris used force maliciously and sadistically for the very purpose of causing Martin harm. The force used by Harris was not disproportionate to the need to restore order and ensure compliance with orders and prison rules. Martin failed to comply with direct orders given to him by Harris and made a statement to Harris which the guard reasonably could have perceived to be a threat to his personal safety. When Harris directed Martin to place his left hand behind his back so he could be fully secured, Martin failed to do so and questioned Harris' order. According to the uncontroverted testimony of Officer Brenda Penn, who witnessed the incident, Martin was very loud and used profanity toward Harris, and repeatedly failed to comply with Harris' orders that he remove his cap and go to the lobby. Doc. 14-4. According to the uncontroverted affidavit of another correctional officer—Officer Brennis Baskin, who responded to Officer Penn's emergency radio call to Lt. Antonio McClain regarding the incident—Baskin ordered Martin to calm down because of his use of profanity to Harris. Doc. 14-5. This Circuit has found that "[p]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008); *see also Brown v. Smith,* 813 F.2d, 1187, 1189 (11th Cir. 1987) (holding that grabbing an inmate's arm to force compliance was not excessive force). Taking Martin's factual allegations as true, the force used by Harris after Martin refused a direct order, became belligerent, uttered threats of harm directed to Harris, and resisted the guards' attempt to place both of his hands in handcuffs, was not for the purpose of causing harm, but for the purpose of preventing any further escalation of the situation and restoring prison safety and security. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal

and denial of authority places the staff and other inmates in danger."). *See also Whitley*, 475 U.S. 3at 320-21 ("The infliction of pain in the course of a prison security measure … does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied … was unreasonable … .").

After Martin was handcuffed, he remained in handcuffs for a very brief period of time before being examined by medical personnel who, other than observing two small red marks on Martin's right wrist, documented no discernible injuries from his encounter with Harris.[2] While Martin maintains that Harris' use of force caused him to drop his catheter which leaked outside the tube and led to an infection, Martin has not provided evidence in the form of medical records or affidavits from medical professionals which reflect that he suffered any injuries or infections because of the incident involving Harris. *See, e.g.*, *Whitehead v. Burnside*, 403 Fed. App'x 401, 403 (11th Cir. 2010) (*per curiam*) ("[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."). Martin's submission of medical records reflecting that he received a prescription for an antibiotic on December 7, 2014, does not, without more, establish a causal connection between the November 17, 2014, incident and his being prescribed an antibiotic twenty days later. *See* Docs. 21-2, 21-4. Additionally, Harris' undisputed evidence indicates that the mere fact Martin had a catheter put him at risk for infection.[3] Doc. 14-7.

---

[2] The record evidence shows that Officer Penn called Lieutenant Antonio McLain at approximately 12:17 p.m., and Harris spoke with McLain by phone about the incident with Martin. Lt. McLain arrived at P-Ward within two minutes and Nurse Bridges conducted Martin's body chart at 12:20 p.m. Docs. 14-2, 14-3 at 3, 14-3 at 6, 14-4, 37-1.

[3] Harris provides an affidavit from Martha Jane Haynes, who is a special needs coordinator for the Office of Health Services with the Alabama Department of Corrections and a registered nurse. According to Ms. Haynes' uncontroverted affidavit, any individual with an indwelling catheter such as a Foley catheter is at risk for infection. Ms. Haynes indicates that movement with the catheter—either physical movement such

Although Martin maintains that Harris' use of force was "unjustified," as explained, an inmate's refusal to comply with orders creates a threat to the safety of staff and inmates. *See, e.g., Danley*, 540 F.3d at 1308. Here, the use of force lasted less than five minutes and ceased after Harris managed to secure Martin with handcuffs. Martin received a medical evaluation within minutes of the incident which revealed two small red marks on his right arm. Again, viewing the evidence in the light most favorable to Martin, his allegations do not support a reliable inference that Harris used force maliciously for the purpose of causing harm or engaged in a wanton infliction of pain. Rather, Harris acted within the permissible range of deference in this case and, based on the undisputed record evidence, the court concludes that his use of force was necessary to restore discipline, diffuse the threat of harm from Martin, and maintain prison security. *Brown*, 813 F.2d at 1188 (holding that prisoner's "evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain."); *McReynolds v. Ala. Dept. of Youth Services*, 2008 WL 1927373, *3 (M.D. Ala. 2008) (citation omitted) ("Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm."). Martin fails to meet his burden of demonstrating a constitutional violation. Accordingly, Harris is entitled to qualified immunity on Martin's excessive force claim against him in his individual capacity.

**C. Verbal Abuse**

Martin complains that Harris verbally "assaulted" him during the November 17, 2014, incident by calling him names and talking to him in a hostile tone. Docs. 1, 21. Derogatory,

---

as walking or manipulation of the catheter—can lead to blood in the urine. Doc 14-7; *see also* Doc. 14-6 at 36–37.

demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. *See Hernandez v. Fla. Dep't of Corr.*, 281 Fed. Appx. 862, 866 (11th Cir. 2008) (holding that inmate's claim of "verbal abuse alone is insufficient to state a constitutional claim"); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *see also Ayala v. Terhune*, 195 F. App'x. 87, 92 (3rd Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts ... resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats by jail officials ... did not rise to the level of a constitutional violation."); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere threat constitutes a constitutional wrong). Because Martin's allegations regarding Harris' use of profane or hostile language fail to state a cognizable claim, the motion for summary judgment on this claim is due to be granted.

**D. Due Process**

Martin complains that he received disciplinary infractions three days after the November 17, 2014, incident occurred. He received disciplinary reports for disobeying a direct order and for threats, but maintains in conclusory fashion that he did not violate any rules. Docs. 1, 21-5.

On November 17, 2014, Harris issued Martin disciplinaries for violations of Rule #922 ("Threat"), and Rule #925 ("Failure to Obey a Direct Order of an ADOC Employee"). Following a hearing on the disciplinary charges, the hearing officer found Martin guilty as charged in the disciplinary reports and sanctioned him for violating Rule #922 with 21 days' disciplinary

segregation and 45 days' loss of canteen, telephone, and visiting privileges from November 17, 2014, and also sanctioned him for violating Rule #925 with 45 days' loss of canteen, telephone, and visiting privileges from December 3, 2014. The disciplinary reports reflect that Martin was provided advance, written notice of the charges against him, an opportunity to call witnesses and present documentary evidence in his own behalf, and a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Doc. 14-3 at 8–18. *See Wolff v. McDonnell*, 418 U.S. 539 (1974); s*ee also Superintendent v. Hill*, 472 U.S. 445 (1985) (at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer).

An allegation that an inmate has been wrongly reported or punished for conduct which he did not commit does not, without more, raise a valid claim of the denial of due process. *See Collins v. King*, 743 F.2d 248 (5th Cir. 1984). While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison officials, in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982), the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Martin merely asserts that Harris issued him incorrect or false disciplinary reports, a conclusory claim which entitles him to no relief.

The Supreme Court has also held that prison regulations concerning confinement of inmates create no liberty interest enforceable in a § 1983 action. *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court determined that the added restraint of prison discipline "did not present the type of atypical, significant deprivation in which a state might conceivably create a

liberty interest." *Id.* at 486. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Claus does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Here, Martin does not demonstrate that his temporary assignment to segregation and loss of privileges because of the misconduct charges subjected him to "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because Martin has not alleged deprivation of a protected liberty interest, he fails to state a due process claim based upon the alleged erroneous disciplinary reports. *See id*. at 487. Harris is entitled to summary judgment on Martin's Fourteenth Amendment due process claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion for summary judgment (Doc. 14) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendant;

4. Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before March 22, 2018**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of

factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 8th day of March, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge